Ejectment for forty-four acres of land in Manchester township. Reinhard Bott, being seized of the lands in question, made his will dated April 19, 1790, whereby he empowered his executors Jacob Barnitz and Adam Kreeber, two of the defendants, to sell his real estate adjoining Yorktown, at their discretion. The original patent granted by the late proprietaries to Herman Bott, who conveyed to'the testator, was for 279 acres, by metes and bounds, of which 86 acres were sold and conveyed to divers persons, 5 acres were reserved to Barbara Bott, and 4y2 acres were devised to the widow, with the mansion house and barn. The executors apprehending that the remainder of the tract contained only 183 acres, advertised it for sale as 180 or 182 acres, and afterwards by other advertisements described it as containing 170 and odd acres, deducting the ground occupied by two roads running through the tract.
The place was put up to sale' by public vendue on the 13th July 1790, and the conditions of. sale, expressed it to contain 170 acres, more or less, when it rested at the bid of Barnitz for 1810I. for the benefit of the estate of the testator. The sale was then adjourned and resumed again in the month of October following, and also at a subsequent period in the ensuing month, but after the utmost pains taken, no additional bid was given. The executors then entered into private *307 treaty with the lessors of the plaintff on the 12th November 1790, for the sale of the lands, and agreed to convey the same to them for 1825I. whereof 500I. was to be paid on the 1st March then next following, and 120I. per annum, until the whole should be paid. Barnitz drew up a small memorandum of the agreement, which was signed by all the parties, describing it shortly to be the plantation whereon Reinhard Bott lately lived, without expressing any quantity of acres, but with a reservation of 5 acres to Barbara Bott and 4^ acres to the widow of the testator. A more formal agreement was executed by the parties on the 15th November following, drawn by the scrivener from the original memorandum delivered to him, describing it as the place whereon Reinhard Bott lately lived, and the names of the adjoining neighbours (which boundaries, it was admitted, would comprehend the 44 acres in dispute,) containing 170 acres, be the same more or less, excepting'4acres to the widow and 5 acres on the Carlisle road reserved for the use of Barbara Bott, for the consideration * money aforesaid, payable as above men- pono tioned; and the executors agreed to convey the premises L to the lessors of the plaintiff on their payment of 500I. and giving security for the remaining instalments. Previous to the execution of this agreement, Eichelberger objected to the expressing the quantity of acres contained therein, as they had bought the whole place in the gross, and not per acre. The scrivener replied, that was of no consequence, as the article set forth the place whereon the testator lately lived, and the adjoining neighbours; and Barnitz, the executor observed thereon, that it could make no odds, as they had the whole
Barnitz afterwards discovering on a survey, that the lands measured 214 acres, exclusive of the roads, was averse to giving the conveyance for that quantity; and when the purchasers came forward on the 1st March 1791, and tendered the 500I., and bonds for the subsequent instalments, the executors offered them a deed for 172 acres and 42 perches of land, exclusive of the roads running through the tract, which was said to be all they had intended to sell. The lands contained in the deed were in two separate tracts, divided from each other by the 44 acres parcel. This deed the purchasers refused to receive, and brought their ejectment.
On the trial, to shew that the executors signed the agreement under a mistake, evidence was given by several witnesses, that the lands laid out in lots of 5 or 10 acres would have produced a much better price, and that lands in the neighbourhood of equal quality had sold for higher sums than the present lauds, when estimated by the acre. It was also sworn by a witness, that one of the purchasers had said in the presence of Kreeber, that they would not have bought, if they had not known there was more land there, than was *308 advertised. But tlie defendants rested their principal reliance on the ground of a legal fraud in Kreeber, one of the executors who was said to have been originally interested in the purchase, with the lessors of the plaintiff. To prove this, a written agreement was produced, dated 2oth November 1790, executed by Eichelberger, Gartner, Kreeber, Peter Einn and John Haller, agreeing to abide by the award of men chosen, to value the lands late of Reinhard Bott, bought by Eichel-berger and Gartner “for the use of the company;” and it was also shewn, that Kreeber took possession of part of the lands within the same month of November, and had sold timber therefrom.
A letter dated 12th April 1791, from the executors to the purchasers, remonstrating against their insisting on a conveyance for 214 acres instead of 170 acres, which they suggested *3091 they * intended to sell only, and offering general terms J of accommodation, was produced 011 the part of the defendants, and excepted to; but the court ruled, that the same should go to the jury in illustration of the supposed fraudis in lege of Kreeber, one of the executors; but declared that the same could not be considered as indicative or explanatory of the written contract of the parties, nor be deemed as operating against the plaintiff.
It was insisted by the defendants, that the words “more 01 less ’ ’ in the articles of agreement, must be restrained to a reasonable quantity, and could mean only 2 or 3 acres at most, and cited 9 Viu. Ab. 343, and Owen 133. But by the court. These words must be considered as to the subject matter to which they are applied. Undoubtedly they must mean a reasonable quantity, and in the case in Owen, we find that a lease of a messuage and 10 acres, sive plus sive minus, would pass 13 acres, which is nearly one third part more than the quantity expressed in the lease. I11 the present instance, if we adopt this as the ratio of proportion, it would stand thus, 10 : 13 :: 170 : 22irV, which is more than is contended for by the plaintiff. But there are other descriptive parts of the agreement, to which superior attention is due. It is marked as the late place of residence of the testator, with the exception of acres only. The boundaries are designated, which would include the lands in question.
For the defendants it was contended, that this agreement was merely executory. 1 Pow. on Cont. 234, 235. It was not to be completed until the 1st March 1791, and each party trusted the other.until that period. Chancery exercises a discretionary power as to executory agreements. 2 Pow. on Con. 14. There was a mistake on the part of one of the executors at least. If a court of equity would not decree a specific execution in such a case, the plaintiff is not entitled to recover. Articles out of which a decree can be raised, must be made with all imaginable fairness, and without any mix *309 ture of fraud, or circumvention. 1 Vern. 229. An agreement must be fair and just in all its part's. 3 Atlcy. 386. It is discretionary with the chancellor to decree a performance or send the party to law. Omission, mistake, or fraud, operate equally as a defence to carrying an agreement into execution. Ib. 389. Barnitz’s idea was, that the land contained no more than 172 acres. It is fair to infer that this impression was made on his mind by Kreeber, who wished to have part of the land at an under value. Harsh and inequitable contracts shall not be executed,' but the party will be left to his remedy at law. Chancery must execute the agreement throughout, or not at all; but a jury may moderate the hardships of a contract. *Prec. Cha. 575. If a misconception arises, without any actual misrepresentation or *- deceit, and the sale of an estate by auction is hurt by the act of an agent for the vendor, in conjunction with the vendee, equity will not carry the agreement into execution. 2 Pow. on Cont. 225. 2 Bro. Cha. Ca. 326.
The purchasers at the vendue expected to buy 170 acres only, or they certainly would have given an advanced price. The lessors of the plaintiff knew the fact of the surplus land, and have declared they would not have purchased unless they had fully understood so. They lay under a moral duty to have disclosed that knowledge, and not having done so, could not expect, in equity, a decree for a specific performance. Suppose a person offers a bale of cloth for sale, believing it to hold 100 yards, and asks iool. for i-t under that impression, and a purchaser from his superior knowledge of the article, is ascertained of its holding out 120 yards, and bargains for the same, shall he hold the vendor to the contract? An agreement made by mistake is not binding, if the point misconceived was the cause of the agreement. 2 Pow. on Cont. 196, 197, cites Mosely 364. 1 Vez. 364. 1 Vez. 400. Specific performance not decreed where there is a concealment on the part of the vendor, x Bro. Cha. Ca. 440. A wilful and industrious concealment of a material fact by one of the parties, in order to keep the other in ignorance, and to profit by that ignorance, is a gross fraud, and will in equity set aside the contract. 4 Bro. Pari. Cas. 497.
But the sale was void iñ law. Kreeber, the executor was both seller and buyer. Cowp. 395. The written agreement of the lessors of the plaintiff and Kreeber declares that the lands were bought for the use of a company of five. All bargains by trustees, made in behalf of themselves, and tending to eat up the trust property, are discouraged in equity. 2 Pow. on Cont. 195. Cites 3 Wins. 251, in note. No trustee or person actiug under him shall be a purchaser in equity, on accotxnt of the great inlets to fraud. 2 Equ. Ca. Ab. 740, pi. 5; 741, pi. 7. Cites Sel. Ca. in Cha. 13, 61. Trustee not allowed to purchase by the instrumentality of another, at a *310 public vendue. It is not enough for the trustee to say, there is no fraud proved, as it is in his own power to conceal it. i Vez. 9.
On the part of the plaintiff it was argued, that if the executors, or one of them, lay under a mistake, it was their own fault not to have sufficiently informed themselves in this particular. The means of information were natural aud easy, and in their own power, and they shall not now avail themselves of a supposed mistake. It was their business and duty *0--,-. to search out the truth. *2 Pow. on Cont. 264. 2 J Atky. 591. The description in the memorandum drawm by Barnitz, and also in the articles of agreement, evidently include the whole lands; and the transactions which immediately preceded the execution of the articles, plainly shew that the whole of the lands was in the contemplation of the sellers as well as buyers. The objection then against the plaintiff’s recovery on this ground, must fail. To call the negligence of the executors a mistake, is too soft a term. If they had reflected for a moment, they must have known that almost all old surveys contain large measure, and should have calculated accordingly, or have got a new survey to be made.
In the case put by the defendants counsel, we have no scruple in saying, that the contract would not be rescinded, either in law or equity. The course of transacting business at large, will have due weight in matters of this nature; and courts of justice will be cautious of impeaching contracts, under the idea of a refined and over-strained morality, which seldom or never takes place in the ordinary affairs of life.
The second objection to the sale has been picked up at the bar. It never occurred to Barnitz when he wrote his letter in April 1791. As to the principle that a vendor cannot bid at the sale of his own goods, we will only observe in general, with Sir Eloyd Kenyon, when master of the rolls, that we do not say the doctrine in Bexwell v. Christie, Cowp. 395, is wrong; but every body knows that bidders at sales are constantly employed by the vendors. 2 Bro. Cha. Ca. 331. And many valuable estates in Pennsylvania are held under sales by. executors at public vendue, where the purchasers have next day re-conveyed the premises to one of the executors. We deny that any case can be cited, where it has been decreed in equity, that if two or more executors or trustees sell lands at public outcry, and the title becomes vested in one of them by the intervention of a third person, that such sale has been disallowed. It is not within the mischief of the cases cited. We further deny the fact of Kree-ber’s being originally interested in the purchase, and offer the oaths of Kreeber and the lessors of the plaintiff on this point, to remove all doubt. [This offer was refused.]
The deed offered by the executors for two distinct parcels of land, is too absurd to need animadversion. A losing bar *311 gain-will be decreed in equity, as well as a beneficial one. % Vern. 398, 423. We therefore infer, that this is such a case, wherein chancery would decree a specific execution, and consequently that the plaintiff is entitled to recover, under the established usage of Pennsylvania.
*The court in their charge to the jury observed, that r*g-to there could be no doubt of the agreement’s taking in L the whole of the lands. The previous advertisements and memorandum, and what passed at the execution of the articles, put it beyond all question. There is no proof whatever of either -of the executors desiring to sell the lands by the acre. But it is objected that Barnitz was mistaken in the quantity. Whose fault was it? And who ought to suffer by this negligence ? Clearly not the purchasers.
Concealment on the part of the vendees is a novel objection. Why should they be bound * to give notice of the quantity of acres to the executors, whose duty it was to inform themselves of this fact? In a policy of insurance, where the most pure good faith is required, it is settled, that the insured need not mention what the underwriter ought to know, what he takes upon himself the knowledge of, or what he waves being informed of. 3 Burr. 1910. Bargains in most instances are trials of skill. It is not expected that a purchaser will point out the advantages of the objects of sale. A buyer will not tell the seller his horse is younger than he represents him to be! Suppose a stack of hay for sale; and the vendor computes it at ten tons, and sells accordingly, shall the vendee, whose superior knowledge instructs him, that it contains twelve tons, lose the benefit of his contract, for not informing him of what he himself ought to know?
As to the legal fraud in Kreeber, the general rule of law is, that the same person should not be both buyer and seller. One of the cases cited lays it down, bargains by trustees in behalf of themselves, are discouraged in equity. The case in 1 Vez. 9, is the strongest; but even there, Rd. Hardwicke observes, if the majority of the creditors agreed to allow the sale, he should not be afraid of making the precedent. The heirs entitled to the surplus could not be consulted. No decision has been shewn, that where two or more executors sell *312 #o-|o-] lands openly *and fairly, and another person buys °-* them for one of them at the full price, such sale has been ruled void. There is a solid distinction in reason between the cases. There are proper checks on the conduct of such co-executor in the last instance; it does not lie in his power merely to conceal a fraud if one is intended. We apprehend, that Kreeber, the co-executor, having joined the company in th£ purchase (if the fact really was so) is matter of evidence respecting a fraud, but not merely of itself a fraud to vacate the contract. The fraud must be judged of by a fair contrast of all the circumstances, and it is seldom indeed that two cases exactly agree. Equity adheres to general principles where they properly apply; where the application of them fails, the reasons and grounds of the exceptions are fully explained 'and made known.
Overruled in part in 9 Pa., 285.
Messrs. Ingersoll, Hartly and Duncan, pro quer.
Messrs. Hamilton, Bowie and Hopkins, pro def.
The transactions attending the sale appear to us to be fair, but must be judged of by the jury. The plantation has been put up at three different periods at public vendue, and ultimately has been sold privately for 15 1. more than could be procured for it by outcry: and we conceive, that a court of chancery would have no difficulties in carrying the present agreement into execution under all the circumstances attending it. [See Prestage v. Eangford. 3 Woodeson, 448 n. 3 Brown’s Cha. Rep. 120. 3 Ves. jr. 740.]
Verdict for the plaintiff, with sixpence damages and sixpence costs.

 Per Thurlow Ld. Chanc. I dont agree with those, who say that where an advantage has "been taken in a contract, which a man of delicacy would not have taken, it must be set aside, Suppose for instance, that A knowing there to be a mine on the estate of B, of which he knew B was ignorant, should enter into a contract to purchase the estate of B for the price of the estate without considering the mine, would the court set it aside ? Why not, since B was not apprised of the mine and A was? Because B, as the buyer, was not obliged from the nature of the contract to make the discovery. It is therefore essentially necessary, in order to set aside the transaction, not only that a great advantage should be taken, but it must arise from some obligation in the party to make the discovery. The court will not correct a contract merely because a man of nice honour would not have entered into it; it must fall within some definition of fraud ; the rule must be drawn so, as not to affect the general transactions of mankind. 2 Brown’s Cha. Cas. 420.