## Philips *against* Scott.

When a contract is made for the sale and purchase of land, with reference to an official survey or draft, and does not provide for a re-measurement, or in some other way indicate a contrary intention, the contract shall be taken as an agreement that the survey or draft contains the true quantity; and this whether the contract be executed or executory, unless there be fraud, or such a plain palpable mistake as to be evidence of fraud.

ERROR to *Centre* county.

This was an action of covenant by John Scott against Hardman Philips, to compel the defendant to convey the tract of land mentioned in an article of agreement. The jury found the following special verdict:

Articles of agreement, made and entered into the 25th day of January, in the year of our Lord 1814, between Sophia Philips, of Philadelphia, widow, by her attorney, Hardman Philips, and William P. Dewees, of Philipsburg, Centre county, proprietors of certain lands on the Mushanan and Clearfield creeks, in Centre and Clearfield counties, of the one part, and John Scott, now or late of Bald Eagle, of the other part. The said parties of the first part hereby agree and engage to sell and release to the party of the second part, a certain tract or piece of ground, situate on the Bald Eagle creek, beginning at a post on the creek, on the division line, between the tracts in the name of Bryan O'Hara and James Lochlan, thence north fifteen west seventy-eight perches to a post; thence south fifty-seven west two hundred and forty-two perches to a post; thence south sixty-three east seventy-five perches to a post on the creek; *thence along* the course of the creek to the place of beginning, and containing ninety-five and one half acres, at and after the rate of 10 dollars per acre, payable, 225 dollars the 1st day of April next, and the same sum the same day of the same month of each succeeding year until the whole is paid, the fractional part to be added to the last payment. The said party of the second part moreover binds himself hereby, that he will clear, or cause to be cleared, at pleasure; which being accomplished, and the purchase money, as aforesaid, paid, the parties of the first part hereby promise and engage to make a full and sufficient title to the said tract of land to the party of the second part, his heirs and assigns; and moreover it is agreed, that, for the full performance of these presents, the parties mutually bind themselves in the penal sum of 500 dollars. Witness their hands and seals this 25th January 1814.

The plaintiff paid the defendant for ninety-five and a half acres of land, at 10 dollars per acre; and this was the quantity of land con-

tained in the original survey and patent. A survey was made of the land before the trial of the cause : it was found to contain one hundred and seventeen acres. The question presented to the court was, whether the defendant was entitled to recover the price of the actual quantity of land, at 10 dollars per acre, or the price of ninety-five and a half acres, at the same rate as mentioned in the contract. The court below (Burnside, president) was of opinion, that the quantity mentioned in the contract was conclusive of the rights of the parties, and gave judgment for the plaintiff for 500 dollars, to be released on the conveyance of the land by the defendant.

*Potter*, for plaintiff in error, cited, Smith *v.* Evans, 6 *Binn.* 102 ; Crotzer *v.* Russel, 9 *Serg. & Rawle* 80 ; M'Clellan *v.* Creswell, 13 *Serg. & Rawle* 143 ; Frederick *v.* Campbell, 14 *Serg. & Rawle* 293 ; Haggerty *v.* Fagan, 2 *Penns. Rep.* 533 ; *Gilmer's Rep.* 246 ; Bailey *v.* Snyder, 13 *Serg. & Rawle* 162.

*Valentine* and *Blanchard*, contra, cited, Large *v.* Penn, 6 *Serg. & Rawle* 488 ; Smith *v.* Evans, 6 *Binn.* 114 ; Bore *v.* M'Cormick, 1 *Serg. & Rawle* 168 ; Haggerty *v.* Fagan, 2 *Penns. Rep.* 538 ; Gleen *v.* Gleen, 4 *Serg. & Rawle* 488.

The opinion of the Court was delivered by

ROGERS, J.—This is an action of covenant, to recover for the excess of the quantity of land above the quantity mentioned in the article of agreement, at the stipulated price per acre. The facts material to the question, in addition to the article itself, are these : on the 24th March 1813, Mr Trezuleny made a survey of the land in dispute for Mr Philips, who had sold the tract to George Ardy. Ardy being unable or unwilling to pay for it, it was sold to the defendant. Although it is not expressly said, yet it is understood, that the agreement was made with a reference to the draft made by Trezuleny.

This is a question of intention. It is difficult to lay down any general rules in such cases : each case must be governed by its own circumstances.

It must be remarked that the quantity is precisely fixed in the agreement, and this with a reference to a survey made at the instance of the vendee. There can be but little doubt that vendor and vendee supposed ninety-five and a half acres was the exact quantity. They seem to be willing to rely upon the accuracy of the artist. There is nothing on the face of the agreement, or in the conduct of the parties, that looks to a re-measurement of the land. The survey by Trezuleny was made the 24th March 1813, and the agreement the 25th January 1814, a period of but little more than nine months from the survey. Had the tract been sold for a gross sum, no person would have had any doubt that the quantity mentioned in the draft would have been held to be the true quantity ; and if, upon a

re-survey, it had turned out to be more or less, that would not have affected the contract.   As there is no covenant as respects the quantity, it would have been regarded as a matter of description, and not an essential part of the agreement.   And this, I apprehend, would have been the same, whether the contract had been executory, or in part executed by the delivery of the deed.   But the difficulty arises from the fact, that it is sold " at and after the rate of 10 dollars per acre," payable in the manner therein stated.   It occurs to me, that under the circumstances of the case, this can make no difference.   The parties appear to have taken Trezuleny's draft as the estimated quantity ; they relied on its exactness, for otherwise they would have provided for a re-survey.   Fixing 10 dollars as the price per acre, was a mode of arriving at the price of the whole tract.   If there was any thing in the agreement, or any thing which occurred at the time, which would show any intention that the tract should be re-measured, it would present a different case.   A rule which produces uncertainty, ought not, in my opinion, to meet encouragement.   It is impossible for us to say, whether the vendee would have been a purchaser, had he been informed that the tract contained a greater number of acres than the estimated quantity.   A purchaser looks to the whole amount he has to pay; and we suppose that he might be willing to give 10 dollars per acre for a tract containing ninety-five and a half acres, and not willing to pay at that rate for the same tract if it contained one hundred and seventeen acres.   I have looked into all the cases bearing on this question, but I am saved the trouble of reviewing them by the labour and pains of Justice Kennedy, in the case of Haggerty *v.* Fagan, 2 *Penns. Rep.* 533; I shall therefore content myself with referring to some which have a more immediate and direct bearing upon the question.

In Smith *v.* Evans, 6 *Binn.* 113, the observations of Justice Brackenridge are very pertinent to this question.   The original contract in Smith *v.* Evans, was a sale, at 12 shillings and 6 pence per acre, of an unpatented tract.   The tract was afterwards patented, and a conveyance was made describing the land by courses and distances, according to the patent, which was said to contain nine hundred and ninety-one and a half acres, and allowance, be the same more or less. Tilghman, C. J. gave no opinion on the original contract, but put the case on its special circumstances.   But Brackenridge, J. considered the case on the original contract.   At the original contract, there would appear to have been before the parties three separate drafts of the surveys of the three adjoining tracts, the three official drafts as surveyed on the ground, the courses and distances of these, with the calculated quantity, returned into the office, and upon which three separate tracts, according to the quantity calculated, patents afterwards issued.   The sale of these three tracts was according to the courses and distances, and, it must be inferred, according to the calculations of the official surveys within these courses and distances.

[Philips v. Scott.]

In such a case, is it ever understood, unless specially provided for, that there is to be a re-measurement, in order to ascertain whether the distances fall short; or a re-calculation, in order to ascertain whether the quantity, according to such courses and distances, will hold out? The inconvenience of such an understanding, and the uncertainty of surveys at different times, and by different chain carriers, would lead to litigation. Were I to refer to what I know to be the understanding of the country, it is, that, in the case of official drafts, in all contracts, unless specially stipulated, the quantity is taken according to the official calculation; and no idea is ever entertained of a re-measurement or a re-calculation. The experience of every day adds to the force and justice of the above remarks, and I must express my regret that the cause was not put upon these original grounds. Frederick *v.* Campbell, 13 *Serg. & Rawle* 136, and M'Lellan et al. *v.* Creswell, 13 *Serg. & Rawle* 143, were also cases where the sale was made by the acre. It is the common experience that official surveys overrun the quantity; and it is usual, where the lands are not sold by the estimated quantity in the survey, but by the measured acre, to provide for the admeasurement, and not to pay or give lands for payment, or to take a conveyance until that admeasurement is made; and when there is not such a provision, and the official surveys are referred to, and a conveyance according to the courses, distances and boundaries of the survey accepted, and bonds given, I do not think, in a common case, says Duncan, J., where the vendor could not recover for the excess, that the vendee is entitled to an allowance for the deficiency; for in that case, though the sale were even by the acre, I would consider the vendee as agreeing to take it by the survey as fixing the quantity; and where there is no fraud or concealment, that he is not entitled to any deduction. In M'Lellan *v.* Campbell, the judge holds the same language. Those were cases in which the contracts were in part executed by a conveyance, and bonds given for the purchase money, and in that respect only do they differ from this.

The principle to be plainly deduced from these cases, and for this purpose they are referred to, is, that when the sale is made in reference to an official survey, and the contract does not provide for an admeasurement of the land, then, unless there is fraud or deception, it shall be considered as amounting to an agreement, that the official survey contains the true quantity, even although the property may have been sold at a stipulated price per acre. If this be the true reading of the contract, what difference can it make whether the contract is executory or executed. The execution of the contract adds to the form of the construction, but it cannot alter the contract itself. It is the business of a court to construe, and not make contracts. Parties are competent to make their own contracts; and when the agreement is once ascertained, all the court has to do is to carry it into effect with good faith. It has been decided in Carter *v.* Campbell, *Gilmer's Rep.* 159, that when a sale is made by the acre, the right

II.—QQ

of ascertaining the quantity by a survey exists, whether expressly reserved or not, and if no time be limited for making the election to survey, it may be done at any time before the whole business is closed.

I cannot assent to the correctness of this principle to the extent laid down; but it must be taken with the restrictions which have been indicated; for neither party has a right to make a survey, to vary the contract.

The result of our opinion is, that when a contract is made with reference to an official survey or draft, and does not provide for a re-measurement, or in some other way indicate a contrary intention, then the contract shall be taken as an agreement that the survey or draft contains the true quantity, and this result cannot be varied either by the vendor or vendee, whether the contract be executed or executory, unless there be fraud, or such a plain palpable mistake as to be evidence of fraud.

And this principle we think necessary, not only for the peace and quiet of society, but as a security for both vendor and vendee.

These disputes, it will be observed, must frequently arise on an alleged deficiency; and the reason is obvious. When there is an excess of quantity nothing is said; it is only when there is a deficiency that an allowance is claimed. It adds, therefore, to the safety of the vendor, that the principle should be adhered to. It is no less the interest of the vendee that this should be the rule. For, otherwise, he may be compelled to pay much more for a tract of land than he ever thought of paying. It is impossible for us to say whether Scott would have been willing to make the purchase, had he been aware of the actual quantity of the land. The vendee calculates the whole amount of the purchase money, and in this way ascertains his ability to meet his engagement. It is very pernicious in its consequences when agreements are made uncertainly. Both vendor and vendee enter into other contracts, on the presumption that the prior one will be fulfilled with good faith. It is sometimes attended with utter ruin, when either party is disappointed in these well founded expectations. The experience of every day satisfies that every rule of law which affords the slightest encouragement to litigation is founded in error. I am happy to find that the decision corresponds with the rule of policy, and am therefore of the opinion that the judgment should be affirmed.

Judgment affirmed.