## Coughenour's Adm'rs *versus* Stauft.

| 77 191 |
| 197 438 |

77 191
24 SC ᵔ221

77 191
f 34 SC ³174

1. Where the intent of a contract for sale of land is clearly to make a sale by the acre as the means of determining the price and the contract is *in fieri*, the rule is to compel payment of purchase-money, according to the quantity; and a survey to ascertain the quantity is presumed to have been intended without an express provision for it.

2. In some cases equity will relieve where the difference in quantity is so great that it strikes the mind as evidence of gross mistake or fraud.

3. When a contract, whether executory or executed, is with reference to an official survey, it will be construed to be a sale according to the quantity stated in it, unless there be express provision for remeasurement; or fraud or such palpable mistake as is evidence of it.

4. Where the contract is executed by deed, or by bond or other security

[Coughenour's Adm'r *v.* Stauft.]

taken for unpaid purchase-money, the rule is not to open such contract to allow a deficiency or recover for an excess; even if the sale be by the acre.

5. The rule that a sale by the acre calls for a survey to fix the quantity, will yield always to the intent of the parties to abide by the quantity stated in the agreement or referred to in other writings.

6. The sale being of a defined tract, the quantity named being said to be "more or less," these words are of great force in determining the intent of the parties to stand upon the quantity stated.

7. A contract was to sell a piece of land, naming adjoiners, &c., "containing 91¾ acres more or less, being the same and all the land whereon (vendor) now resides," for $10,500, payable, &c., "the remaining unpaid balance to be paid * * * at the rate of $114.40 per acre;" the $10 500 was about $4 more than 91¾ acres at $114.40    The land, by a subsequent survey, contained 118 acres.    *Held*, that the $10,500 was the sum fixed to be paid as the purchase-money, and the vendor could not recover for the excess above 91¾ acres; although the contract was executory.

November 21st 1874.    Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Fayette county:* No. 291, to October and November Term 1874.

This was an action of ejectment, brought October 15th 1873, by B. F. Coughenour and J. S. Detweiler, administrators, &c., of Isaiah Coughenour, deceased, against J. Stauft, to enforce the payment of the purchase-money of a tract of land, contracted to be sold by the decedent to the defendants, under the articles of agreement hereafter stated.

The case was tried, October 1st 1874, before Stowe, J., of the Fifth district.

The plaintiffs gave in evidence the agreement, viz. :—

"Agreement entered into this 29th day of June 1872, by and between Isaiah Coughenour, of, &c., of the one part, and J. Stauft, of, &c., of the other part.    Witnesseth, That the said Isaiah Coughenour, for the consideration of the sum of $10,500, to be paid as follows, to wit: $1000 in hand, $5000 on the 1st day of April 1873, when a good and sufficient deed is to be executed and delivered, clear of all encumbrances whatsoever to the said J. Stauft, his heirs or assigns.    The remaining unpaid balance to be paid in two yearly payments, at the rate of $114.40 per acre; said payments respectively due April 1st 1874 and 1875: doth grant, bargain and sell to the said J. Stauft, his heirs or assigns, all that piece, parcel or tract of land, bounded and described as follows, to wit: adjoining lands of Israel Painter, George E. Hogg and others, said lands being a part of a certain tract of land purchased from George E. Hogg, by said I. Coughenour, situated and lying in Bullskin and Tyrone townships, &c., containing 91¾ acres more or less, it being the same and all the land whereon he now resides. * * *

"In consideration thereof, the said I. Coughenour, is to retain possession of house and barn and all lands cultivated, but shall give full possession of all other portions of land and the right to

[Coughenour's Adm'rs v. Stauft.]

enter any portion thereof and construct works for mining, coking and conveying all coal and minerals away, that the party of the second part may desire, and make such use of timber, stone and lands as may be required for such or any other purpose that may be desired by the parties of the second part, and it is further agreed that entire possession shall be given by said I. Coughenour, on the 1st day of April 1873, without further notice, and that all payments unpaid and to be paid by the said J. Stauft, shall be secured to the said I. Coughenour, by mortgage upon the land herein mentioned, he accepting the same as ample security for unpaid payments."

$1000 were paid at the execution of the article.

Also, that the defendant went into possession prior to April 1st 1873, and that Isaac Coughenour having died, and on the petition of the plaintiffs as his administrators, the Orphans' Court of Fayette county, on the 9th of September 1873, decreed specific execution by the defendant of the contract; that the deed for the land in accordance with the decree had been executed by the administrators, and notice given to the defendants' attorney that it was ready for delivery, but that Stauft had not complied with the agreement nor received the deed.

Under objection and exception by defendant, the plaintiffs gave evidence that the tract mentioned in the article of agreement contained 118 acres, 60 perches.

The plaintiffs then made the following offer.

"The plaintiffs, claiming that there is a latent ambiguity in the article of agreement, between Coughenour and Stauft, in regard to the quantity of the land and the price, propose to prove that the defendant admitted on several occasions that he bought the land by the acre, at the price of $114.40 per acre."

The defendant objected: "That there is no latent ambiguity in the article of agreement; that it is not competent to construe it by the declarations of the defendant, and that the evidence offered is irrelevant."

The offer was rejected and a bill of exceptions sealed.

The plaintiffs requested the court to charge the jury:—

1st. That under the article of agreement between Coughenour and Stauft, dated June 29th 1872, the plaintiffs are entitled to recover for the amount of land contained in the tract as surveyed, to wit: for 118 acres and 60 perches, at the rate of $114.40 per acre.

2. That even if there were no ambiguity in the article of agreement, the mistake is so great, that a chancellor would correct it, and therefore the jury should allow the plaintiffs for the difference

27 P. F. SMITH—13

between the quantity mentioned in the article, and the true amount now found by actual survey.

Both points were refused.

The court charged:—

"We are compelled under our view of the written agreement to instruct you that notwithstanding the evidence admitted in the case on part of plaintiffs, showing that there are more than 91¾ acres in the tract of land in question; the true construction by which you and the parties are bound, is that all the plaintiffs can compel defendant to pay is the sum of $10,500, and that your verdict must be based upon that view of the agreement. Plaintiffs having shown a good title, free of encumbrance here, as we decidedly think they have, they are entitled to your verdict for 6 cents damages and costs, to be released upon the payment of the purchase-money now due, within such reasonable time as you may fix."

The verdict was for the plaintiffs, with six cents damages, to be released upon the payment by the defendant to them of $8157.50 within ninety days from October 2d 1874.

The plaintiffs took a writ of error and assigned for error, the rejection of their offer of evidence, the refusal of their points and the charge of the court.

*D. Kaine* (with whom were *Collins & Bailey*), for plaintiffs in error.—If the object of an agreement can be seen, the writing, whether under seal or not, is to be construed to effect that intention: Worrall's Accounts, 5 W. & S. 113; Gibson *v.* Tyson, 5 Watts 37. If the instrument cannot be understood without extraneous facts, the jury must judge the whole: Hetherington *v.* Clark, 6 Casey 396; Hoffman *v.* Danner, 2 Harris 28. Parol evidence may be given of a consideration not in a deed, if not inconsistent with that expressed: Buckley's Appeal, 12 Wright 496; Strawbridge *v.* Cartledge, 7 W. & S. 399; 1 Greenl. Ev. §§ 282, 286. When a contract is made under a mistake or ignorance of a material fact, it is relievable in equity : Miles *v.* Stevens, 3 Barr 37; Jenks *v.* Fritz, 7 W. & S. 201; 1 Story's Eq., § 144.

*W. H. Playford* (with whom was *C. E. Boyle*), for defendant in error.—Where land has been sold for a round sum, even a vendee must pay what he agreed; much more is the vendor limited to the amount named in the article: Smith *v.* Evans, 6 Binn. 113; Dagne *v.* King, 1 Yeates 222; Philips *v.* Scott, 2 Watts 320; Riddle *v.* Foster, 8 Casey 163; Large *v.* Penn, 6 S. & R. 488; Haggerty *v.* Fagen, 2 Penna. R- 533; Cronister *v.* Cronister, 1 W. & S. 444; Dickinson *v.* Voorhees, 7 Id. 353.

Chief Justice AGNEW delivered the opinion of the court, January 4th 1875.

[Coughenour's Adm'rs *v.* Stauft.]

This is a close case and difficult to determine. On the one hand the contract is still executory, and the difference in quantity unusually large, turning the equity of specific performance to the side of the plaintiff. On the other, the leading features and terms of the agreement turned strongly to the side of the defendant on the question of the actual intent of the parties. Where the intent of the parties is clearly to make a sale by the acre, as the means of determining the price, and the contract is still *in fieri*, the rule undoubtedly is, to compel payment of the purchase-money according to the quantity. In such a case, a survey, to ascertain the qauntity, is presumed to be intended, even without an express provision for admeasurement. This is stated by C. J. Tilghman, to be the rule in Pennsylvania: Bailey *v.* Snyder, 13 S. & R. 160; Paull *v.* Lewis, 4 Watts 402; Hershey *v.* Keembortz, 6 Barr 128. It is also said, there may be cases in which equity would relieve where the difference in quantity is so very great as to strike the mind at once as evidence of gross mistake or fraud: Boar *v.* McCormick, 1 S. & R. 168; Thomas *v.* Pansy, Peters' C. C. R. 49; McDowell *v.* Cooper, 14 S. & R. 299; Bailey *v.* Snyder, 13 S. & R. 160. Yet on this point it was said by Gibson, C. J., in Aschom *v.* Smith, 2 Penna. 218: "Our reports furnish no instance of an abatement, even where the difference was considerable, or where the principle has been sanctioned further than to admit that there may be extreme cases in which chancery would infer some great misapprehension, and on that ground relax the rules of law." On the other hand, there are exceptions to the rule that a sale by the acre requires an ascertainment of quantity of survey. Thus, when a contract is made with reference to an official survey or draft, the contract will be construed as an agreement to sell according to the quantity stated therein, unless there be express provision for a remeasurement or fraud, or such palpable mistake as to evidence it: Philips *v.* Scott, 2 Watts 318. And this is the case, whether the contract be executory or executed: Id. See also Galbraith *v.* Galbraith, 6 Watts 117; Wier *v.* Dougherty, 3 Casey 182. Where the contract is executed by deed and bond, or other security taken for the unpaid purchase-money, the rule is not to open a contract so far executed to allow for a deficiency of quantity, nor can there be a recovery for an excess. The cases are numerous: Dagne *v.* King, 1 Yeates 322; Boar *v.* McCormick, *supra*; Glenn *v.* Glenn, 4 S. & R. 488; Large *v.* Penn, 6 Id. 488; McDowell *v.* Cooper, *supra*; Dickinson *v.* Voorhees, 7 W. & S. 353; Hershey *v.* Keembortz, *supra*. This rule as to the closing of the contract by deed, holds even when the contract was for a sale by the acre: Smith *v.* Evans, 6 Binn. 102; Cronister *v.* Cronister, 1 W. & S. 442; Farmers' & Mech. Bank *v.* Galbraith, 10 Barr 490.

From these authorities it will be seen that the rule that a sale

by the acre will call for a survey to determine quantity, is by no means a rigid one, and will give way always to the intent of the parties to abide by the quantity stated in the agreement, or referred to in other writings. This brings us to the intent of these parties as gathered from the article of sale before us. The learned judge below thought the intent was to sell and purchase the tract of land referred to, and partially described in the article, at a round sum, without further ascertainment of the price. We incline to agree with him, though without thinking it a plain case. The agreement begins with the statement that Isaiah Coughenour, "for the consideration of the sum of $10,500, to be paid as follows:" then stating the instalments, "doth grant, bargain and sell," " *all* that piece, parcel, or tract of land bounded and described as follows, to wit": then follows a partial description by boundaries, and the place where it is situate, describing it also as " part of a *certain tract* of land purchased from G. E. Hogg by said I. Coughenour," " containing 91¾ acres, *more or less*, it being the *same* and *all the land whereon he now resides.*" There could be no possible doubt on this state of the case of the intention of the parties to sell and purchase a certain well known defined tract of land as containing 91¾ acres, for a specified and determined sum of money, were it not that in providing for the payment by instalments the agreement proceeds to say : " The remaining unpaid balance to be paid in two yearly payments, *at the rate of* $114.40 *per acre,* said payments respectively due April 1st 1874 and 1875." Does this expression as to the rate per acre overcome the otherwise clear intention to sell a certain known tract of land for a specified round sum of money, without any language looking toward a future admeasurement ? We incline to think not. It is a small circumstance, but a calculation of 91¾ acres at $114.40, gives the sum of $10,495.30, while the parties adopted as the consideration the sum of $10,500, showing an intent to adopt a round sum. Then when the rate per acre is mentioned it wears the appearance of a recital of the mode of arriving at the sum of $10,500, rather than a provision for a mode of ascertaining the balance. Here the entire absence of a provision for a survey or measurement, bears strongly in corroboration of the interpretation that these words, as to rate, were but a recital and not a covenant. An intention to covenant for a measurement, it seems to us, would have been more plainly expressed, in view of the language indicating a sale by a round sum, and the absence of language to express a contrary intent. Then there are expressions strongly supporting the intent to sell for a specified and determined sum of money. Not only is it said that the subject of sale is a certain *tract* of land bounded, &c., but it is also said this tract *contains* 91¾ *acres more or less*, and is the *same* and *all* the land *on which* I. Coughenour *resides*. Thus the quantity is defined, and is predicated of a well known and under-

[Coughenour's Adm'rs *v.* Stauft.]

stood piece, parcel or tract of land. Then it is averred that the quantity is stated, whether it be *more or less ;* these words have frequently been held to be of great force in determining the intent of the parties to stand upon the stated quantity as fixed and determined between them. They imply, says C. J. Tilghman, that the boundaries are fixed, and may contain more or less: Glenn *v.* Glenn, 4 S. & R. 493 ; Thomas *v.* Perry, Peters' C. C. R. 58 ; Galbraith *v.* Galbraith, 6 Watts 117. Upon the whole case it looks to us that each party was content to run the risk of the quantity in the tract being as specified, 91¾ acres. This being so, it is clear that even though the contract is still executory, it must be treated as fixed in its terms, and the sum stated is to be paid as the purchase-money. Such being the interpretation of the writing, it is evident that parol proof of the after declarations of one of the parties was properly rejected as incompetent to affect its terms. There was no offer to show anything occurring at the time of the execution of the writing as evidence of fraud or plain mistake.

Finding no error in the record the judgment is affirmed.