Imes v. Kaufman

*Robert G. Bushong,* for plaintiff.

*Charles H. Weidner* and *John H. Bertolet,* for defendant.

SHANAMAN, J., January 4, 1944.—The pleadings are: (1) Plaintiff's bill in equity praying that defendant be ordered to perform his agreement to sell real estate by conveying to plaintiff the tract in question containing 28 acres and 29 perches, upon the payment to defendant by plaintiff of $1,000; (2) defendant's answer, counter-praying that plaintiff pay to defendant the sum of $2,318.13 upon a conveyance by defendant to plaintiff of the said tract.

The issue is whether plaintiff shall pay for each acre at the agreed rate of $100 per acre, or shall pay for the tract upon the basis of its having been treated by the parties as 12 acres, more or less, sold at $100 an acre.

### Findings of fact

1. George W. Imes, plaintiff, is the vendee, and John N. Kaufman, defendant, is the vendor in articles of agreement dated July 19, 1941, for the sale and purchase of 12 acres of land in Amity and Exeter Townships, Berks County, Pa. The terms and conditions bearing on the point at issue are recited in the court's discussion.

2. Defendant knew that the tract consisted of a field of about twelve acres, and embraced also another field adjacent to the first, and of substantially similar size.

3. Neither vendor nor vendee knew the exact acreage.

4. Plaintiff had visited and inspected the tract several times.

5. During the drafting of the agreement, defendant either expressly, as plaintiff contends, or by silence, as defendant admits, when the size was stated to be about twelve acres, represented that such was the acreage.

6. Fraud is neither alleged nor proved.

7. After the agreement had been signed, vendee went on the land and expended over $4,000 in the erection of a house. Defendant knew of the construction, at least as soon as the foundation walls were laid, and did not object.

8. A subsequent survey revealed that the land contained 28 acres and 29 perches gross.

### Discussion

The question is primarily what was the contract? Fraud is not alleged. Ordinarily, a contract in writing is interpreted by the court from the four corners of the instrument, and without the aid of evidence dehors. Where the parties testify that, despite the language of their agreement, calling for the conveyance of 12 undescribed acres to be measured, they actually both had in mind the same definite tract, whose boundaries they alike knew and understood, the construction of their contract depends upon the writing and upon oral testimony as well. We shall first consider the legal effect of what their agreement says, and afterward what effect may properly be given to the oral evidence. The written agreement provides that Kaufman sells and Imes buys "Twelve acres, more or less, situate in Amity and Exeter Townships, Berks Co., Pa., between Stonersville and Yellow House, Pa.", and that Imes

agrees "to pay for the said property the sum of $100 per acre, which acreage to be determined by the surveyor, at the time of the survey . . . as follows: $500 on the signing of this agreement, and . . . the balance, the amount to be determined by the acreage at the time of survey, at $100 per acre". While the agreement is very vague in its description of the land agreed to be sold, the parties by their pleadings and testimony have agreed that they had the same definite tract in mind. The agreement of sale must therefore be considered as if it had particularly described the tract by adjoiners or by metes and bounds, and then called for a survey and measurement of quantity. Imes contends that it is unfair to compel him to pay $100 an acre for an excess of nearly 17 acres, and that if he pays $1,500 in all he will be allowing for the utmost excess of acreage that would be fair and reasonable over the 12 acres. Kaufman insists that the parties did not know the acreage and therefore stipulated for the payment of $100 per acre. He also denies he ever said the whole tract was 12 acres more or less, but only the field toward Reading, but admits that he remained silent when the alderman stated the tract to contain 12 acres. He explains this by the fact that he did not consider the matter of importance, since the tract was to be surveyed and was to be paid for at so much an acre.

The mention of a certain number of acres "more or less" in the description of a tract otherwise described or ascertained implies "that the boundaries are fixed, and may contain more or less": Coughenour's Admrs. v. Stauft, 77 Pa. 191, 197.

"Where the tract is particularly described by boundaries the quantity is in general stated as mere matter of description, and not as a covenant that the number of acres stated is the true number contained in the tract": Wier et al. v. Dougherty, 27 Pa. 182, 183.

The rule is applied in cases either of deficiency or of excess: Dagne v. King et ux., 1 Yeates 322, 323; Lessee

of Eichelberger et al. v. Barnitz et al., 1 Yeates 307, 312. In Glen et al. v. Glen, 4 S. & R. 488, 493, where the surplus was 13 acres over 200 acres, the court said, "Why were the words *more or less* used, but to shew, the understanding of the parties, that the boundaries should not be affected by a deficiency or surplus of quantity? Would a court of chancery interfere in a case of this kind? I think not. The surplus is not so great as to carry with it irresistible evidence of an essential mistake . . ."

". . . the quantity, . . . was only matter of description: it was the *tract*, and not any particular number of acres, which was the subject of the grant . . . ": Smith v. Oliver, 11 S. & R. 257, 265.

If in such case the purchase price is a round sum, each party is held to run the risk of the quantity, that is, to run the risk that more or less land might be conveyed for the round sum agreed upon: Coughenour's Admrs. v. Stauft, supra. Even though the parties have contracted for a certain sum per acre, the rule will be applied in the same way, if they have contracted with reference to an official survey, and have not in their contract provided for a measurement of the land. Thus in Philips v. Scott, 2 Watts 318, 321, the tract was described by courses and distances, was stated to contain 95½ acres, and was sold at $10 an acre. It turned out to contain 117 acres. The vendee was held entitled to receive the entire tract upon payment of $10 for each of 95½ acres. The court, however, intimated that (p. 320), "If there was anything in the agreement, or anything which occurred at the time, which would show any intention that the tract should be remeasured, it would present a different case." In Galbraith v. Galbraith, 6 Watts 112, 117, 118, the court said: "An examination of the numerous decided cases in our own reports will, I think, show, that in the common case between vendor and vendee, on a conveyance of a tract of land, bounded by adjoining owners, and

described as a tract containing so many acres, be the same more or less, at a certain price per acre, when there is no stipulation for admeasurement, nor any *mala fides* proved, redress cannot, after the bargain is closed, be given to either party for a surplus or deficiency subsequently appearing." The agreement under consideration must, under Galbraith v. Galbraith, since measurement was stipulated, be taken to mean not a valuation at so much per acre for the quantity of 12 acres, be the same more or less, but that the tract shall be valued at $100 per acre for each and every acre thereof on strict measurement.

In Ashcom v. Smith, 2 P. & W. 211, the tract was stated to contain 300 acres, was sold at public sale as "300 acres, more or less", and it was stated that the tract must be measured and that the vendors would sell it by the acre. It was struck down to defendant at $18 per acre. Upon surveying, the quantity was found to be 354 acres, with the allowance for roads. The excess land was up a woodland slope and of little value. Defendant objected to the quantity, and contended that he would be compelled to spend more money than he expected to spend. On suit brought to enforce the contract, defendant obtained a verdict and had judgment, but on appeal the Supreme Court reversed, saying (p. 217) :

"The difference between a deficit for which an abatement is claimed where the land has been sold for a round sum, and an excess, for which a rescission of the contract is claimed where it has been sold by the acre, is plain and palpable. In the one case, the vendee is a loser to the extent of the difference, and in the other he gets value for whatever he has to pay. Yet our reports furnish no instance of an abatement, even where the difference was considerable; or where the principle has been sanctioned further than to admit that there may be extreme cases in which chancery would infer some great misapprehension, and on that ground relax

the rules of law. . . . Equity will indeed relieve against a plain mistake, as well as against misrepresentation and fraud. But can mistake be alleged in a matter which was considered as *doubtful*, and treated accordingly? Where each of the parties is content to take the risk of its turning out in a particular way, chancery will certainly not relieve against the event."

It follows that plaintiff must take the entire tract of 29 acres, and pay defendant $100 for each acre of the 29, unless from the oral evidence it appears that the parties actually agreed upon different terms, or unless the discrepancy in acreage is so unreasonably great or the representations by vendor were such as to indicate the presence of gross mistake or imposition. Imes, the purchaser, before he entered into the agreement, visited the tract three times, and he walked around the entire tract or at least for such distance as enabled him to view it. His opportunity to judge the area was as good as that of defendant. It is not shown that the seller was expert in estimating acreage or even more skilled than the buyer. Plaintiff admits that he wanted another surveyor, Mr. Seidel, who "had done work for me before". Plaintiff himself states that Kaufman said, "I don't think it is more than 12 acres." Kaufman, it must be remembered, never bought the tract as such, but acquired it as a part of the larger tract. There is no evidence that Kaufman was in a position to know the acreage of the newly-created purpart. Furthermore, while the alderman testifies that Kaufman stated the acreage to him for the purpose of drawing the agreement, it is admitted that Imes took Kaufman to the alderman, who had done previous business for Imes, and it may be gathered from the testimony that Imes did most of the talking at the alderman's. The provision for measurement and ascertainment of the total price in accordance with such measurement is twice stated, and there is no conten-

tion that either of the parties misunderstood that part of the agreement. The discrepancy in acreage, it is true, is great. The percentage is more than 100 percent of 12 acres. It is not, however, great in the sense that it would render the tract different in character from what plaintiff said he thought it was when he purchased it. That is to say, he did not think he was purchasing sufficient ground for the erection of a home with an acre or two more appurtenant for cultivation. He admits that he knew he was buying two large fields and a meadow. If they measured 29 acres instead of 12 acres, the case is not substantially different from Phillips v. Crist, 33 Pa. Superior Ct. 445, in which a tract of 90 acres had been stated to contain 60, and the case of Miller v. Cramer et al., 190 Pa. 315, in which a tract of 18 acres had been stated to contain four and one half acres. Plaintiff was either negligent himself or he took the risk. An offer has been made to convey to plaintiff a measured part of the 29 acres such as would contain between 12 and 15 acres and would include the house which plaintiff has erected, if Mr. Kaufman and Mr. Imes can mutually agree upon the boundaries. This offer Mr. Imes has refused. Since the parties themselves valued the land at $100 per acre, it is impossible to see any reasons or circumstances to justify plaintiff's receiving 29 acres at about one half the price the parties had agreed upon.

If the discrepancy in acreage raises no equities conclusive either way, shall we say there was imposition on the part of defendant? If any existed, what should be its effect? Plaintiff contends he did not expect to pay more than $1,200 or possibly $1,500 for the land. In the beginning he was interested only in one tract and he himself testified that defendant persuaded him to take the other field as well. Without waiting for the measurement of the ground, he built his house upon the second tract. The two fields are not dissimilar and plaintiff valued the ground at $100 an acre and was

willing to pay that. From his refusal of record to accept defendant's offer of a conveyance of 12 to 15 acres, including the house, to be paid for at $100 per acre, the inference of unworthy advantage on plaintiff's part lies at least at hand, even if we choose not to draw it. It is true that we may properly draw the inference that Kaufman on his part did not act in good faith, or was at least negligent in not stating a larger acreage in the alderman's office. He says he knew or supposed that plaintiff knew that the whole field was more than 12 acres, and that he supposed when the agreement was being drafted that the matter was not important, since the acreage was to be measured. On the whole, we think the balance of misapprehension, negligence, or even of bad faith appears fairly even between the parties.

Neither of these parties was inexperienced in affairs of business. Plaintiff himself lives or has his place of business in the country, and has been an automobile dealer for many years. We think neither can fairly charge the other with negligence or with bad faith without laying himself open to the same charge. To prove mistake such as would be ground for rescission or to prove a material imposition or a parol warranty that the acreage was not more than 12 acres more or less, the evidence should be clear and convincing. We do not find it so. If plaintiff wishes to keep the 29 acres, he must pay for them at the price per acre which he himself fixed. It would be grossly inequitable for him to obtain by the transaction 29 acres, or more than twice the acreage he thought he was buying, at a cost no greater than he contemplated to pay for 12 acres. But this is not to say that he can be compelled to take the 29 acres at $100 per acre. Even if we give absolute credit to defendant's testimony, it remains that in the alderman's office he permitted the tract to be represented to the alderman and to plaintiff as 12 acres, more or less, so as to cost plaintiff $1,200, or perhaps

a hundred or two hundred dollars more. Defendant knew or at least believed that the field toward Reading was in itself about 12 acres and he knew that the other field toward Boyertown was a field of substantially similar acreage. Even if he was without censurable intent, he was certainly negligent. To compel plaintiff to take the 29 acres at $100 an acre would be inequitable, in view of defendant's misrepresentation of the acreage. Defendant had misrepresented the quantity and upon this representation plaintiff had a right to rely: Straus v. Norris, 78 N. J. Eq. 488, 79 Atl. 611; Paine v. Upton, 87 N. Y. 327. Plaintiff relies on these cases to establish his right to keep the 29 acres for the price of 12. They do not go so far; they involve questions of a deficiency in acreage, for which vendee successfully sought a reduction in price for each acre of the deficiency. They do, however, sustain plaintiff's right to obtain an equitable reformation of his obligation. We think that the offer by defendant to modify the agreement so as to call for the conveyance of say 15 acres, including the land on which the house had been built, with boundaries agreeable to the parties, could properly have been accepted by plaintiff as constituting in the light of all the circumstances the nearest approach to what a court of equity would adjudicate as the true intent of the parties. Such a tract might for instance include the field toward Reading, in which plaintiff was at first solely interested, and three acres, including the house, of the meadow and field toward Boyertown, which defendant was unwilling to sell unless the field toward Reading were sold.

It is one of the necessary inherent qualities of a decree of specific performance that it does complete justice. A decree for specific performance will never be made unless substantial justice will be advanced thereby.

" 'This court will not become an instrument of injustice; and if the case presented is such that it would be

unconscientious to grant the complainant the relief he seeks, and repugnant to a just sense of right between man and man, the court will refuse its aid. . . . The defendant may be unable to prove any mistake, fraud, or accident, in reference to its execution; and yet the conduct of the complainant may have induced such a state of things in relation to the subject-matter of the agreement as would make it not only proper, but the plain duty of the court to refuse its aid in enforcing its specific performance.' Stoutenburgh v. Tompkins, 9 N. J. Eq. 332, 335, 336. 'The remedy by specific performance is discretionary. The question in such cases is not what must the court do, but what, in view of all the circumstances of the case in judgment, should it do to further justice.' Johnson v. Somerville, 33 N. J. Eq. 152, 153. . . . An unintentional misrepresentation of a material matter will be operative as a bar to a decree for specific performance. Wuesthoff v. Seymour, 22 N. J. Eq. 66, 69. The material inquiry is not whether a complainant intended to mislead defendant, but is, did he mislead him? Prof. Pomeroy says: 'In maintaining the defence to a suit for specific performance, the knowledge, belief, or intent of the party making the representations is wholly immaterial, and the question is not raised. . . .' In Bascomb v. Beckwith, L. R. 8 Eq. Cases 100, a map was exhibited to the purchaser which was not misleading if examined carefully and which was not intended to mislead, but which was liable to mislead if not carefully examined, and which map did in fact mislead the purchaser; specific performance was accordingly denied": Bowker v. Cunningham, 78 N. J. Eq. 458, 461, 79 Atl. 608, 610.

"It is well settled that, though a contract is valid at law, equity will not enforce it specifically unless the transaction be free from fraud or surprise.": Brown v. Pitcairn, 148 Pa. 387, 392.

In the case before us, both plaintiff and defendant, in bill and answer respectively, pray for specific per-

formance in accordance with their contentions. Both pray also for general relief. While we may not and will not make a contract for them, we choose to interpret and apply their contract in the light of all the circumstances. Our decree, if not prayed for by either party, is at least within the issues raised by the pleadings. It is our duty to determine if possible all the rights and claims of the parties concerning the subject-matter, and to make such disposition of the case as will afford complete relief within the scope of the pleadings and issues. Defendant asking specific performance is pro tanto himself a plaintiff.

". . . where exact enforcement of the contract is impracticable, plaintiff may sometimes have approximate relief in some other form which will secure to him the substantial advantages of the contract . . . So, where it would be inequitable to refuse specific performance of an oral contract for the sale of real property, it has been held that defendant vendor may not successfully complain of enforcement in a manner the most favorable to him of all possible alternatives": 58 C. J. 1222-23.

". . . a change in conditions after the making of the contract, or the conduct of the prospective grantee, may justify a departure from the strict terms of the contract . . .": 58 C. J. 1226.

When general relief is prayed, "the court may grant any relief consistent with the facts pleaded and proved": 58 C. J. 1229. We should not close our eyes to the importance to the parties of their respective titles being established and quieted.

"A prayer for general relief is as broad as the equitable powers of the court. Under it the court will shape its decree according to the equities of the case, and broadly speaking will grant any relief warranted by the allegations of the bill . . .": 21 C. J. 679.

If the whole tract be taken, we allow one acre for roads for a deduction in price. If the parties wish to

but cannot agree on the boundaries of a tract of 12 to 15 acres, or thereabouts, agreeable to each, counsel may consider a motion for the appointment of a special master to act in the matter. It is to be hoped that in the interest of the parties themselves, for the establishing and quieting of their respective titles, and the avoidance of additional expense, the decision of the chancellor may lead to a prompt termination of the controversy. In the absence of any requests for findings of fact and conclusions of law—an absence which we do not approve—we have made such findings as, taken with the discussion, will suffice for an adjudication.

### Conclusions of law

1. The written agreement, by itself, would obligate vendee to take the tract at $100 for each and every acre.

2. The discrepancy in acreage is not, under all the circumstances, a circumstance that would·invalidate the contract.

3. The representation by vendee that the tract contained 12 acres more or less did not, under the circumstances, constitute a positive warranty that the land should contain not more than 12 acres more or less.

4. Both vendor and vendee were negligent, vendor in not informing the alderman who drafted the instrument that the land contained considerably more than 12 acres, and vendee in not earlier ascertaining the acreage.

5. Plaintiff is entitled to demand and receive a deed for the entire tract, upon paying $100 for each and every acre, less an allowance of one acre for roads, and less $500 paid by vendee at the time he executed the agreement of sale.

6. Or, alternatively, plaintiff is entitled to demand and receive, at the same rate per acre, a deed for from 12 to 15 acres, including the land on which plaintiff

has built his house, if the parties can agree upon the boundaries.

7. Plaintiff is not entitled to a rescission of the contract on the condition that defendant pay him the cost of the house plaintiff has erected on the tract.

8. Defendant is not entitled to demand that plaintiff take and pay for the entire tract of 28 acres, 29 perches, at $100 an acre.

9. Each party shall pay his own costs.

And now, to wit, January 4, 1944, the prothonotary is directed to enter a decree nisi in accordance with the foregoing decision, and forthwith to give notice thereof to the parties or their counsel of record.