PERCY S. STRAUS

*v.*

ANNE NORRIS et al.

[Submitted February 28th. 1911. Decided March 30th, 1911.]

1. An owner of land. who took the benefit of the efforts of a broker seeking to procure a purchaser of the land, and who signed documents relating thereto, thereby ratified the acts of the broker.

2. Where through·innocent mistake a grantor represented that a tract, described by metes and bounds. containing but sixty-nine and seventy-one hundredths acres contained eighty-two acres more or less, the grantee, purchasing by the acre and paying the price in ignorance of the defi-

ciency, could sue in equity for the deficiency in the acreage; the words "more or less" not including a considerable variance, and the mistake being sufficient to induce the court to believe that if the truth had been known the purchase would not have been made.

On final hearing on bill, answer, replication and proofs.

On July 22d, 1908, the Shrewsbury Heights Improvement Company, a New Jersey corporation, was the owner of a farm in Monmouth county, which was known as the Joseph C. Patterson farm. The beneficial ownership of all the capital stock of the company was vested in the defendant Anne Norris. On the day above named she made a contract with the complainant, in her own name, by which she agreed in consideration of $37,500 to convey to him that portion of the farm lying north of the Navesink road described as

"containing eighty-two acres more or less, bounded on the north by the Chapel Hill road and lands of Holmes, Tilton and Corcoran, on the east by lands of Parmly, on the south by the Navesink road, and on the west by the public road and the New Jersey Southern railroad."

The transaction was completed on August 11th, 1908, by the delivery of a deed of conveyance by the company to the complainant, in which deed the land is described by metes and bounds, at the end of which description occurs these words, "containing eighty-two acres more or less." The land is likewise described in the same deed as a portion of a tract of one hundred and fifteen and thirty-one hundredths acres described in a deed made by John A. Miller to the Shrewsbury Heights Improvement Company in 1906, which lies northerly of the centre line of the road leading from Middletown turnpike to Navesink. The deed also contains this paragraph:

"This deed is intended to convey all that portion (and no more) of the farm now owned by the Shrewsbury Heights Improvement Company as lies north of the Navesink road, and bounded as follows: On the north by the Chapel Hill road and land of Holmes, Tilton and Corcoran, on the east by lands of Parmly, on the south by the Navesink road, and on the west by a public road and the right of way of the New Jersey Southern Railroad Company."

Straus entered into possession of the lands so conveyed to him, and in October, 1908, had a topographical map made by an engineer for the purpose of preparing the land for a country residence. The engineer discovered in his preliminary work that there was considerable less than eighty-two acres in the tract, and upon making a survey, which he did by direction of the complainant, found that the plot contained sixty-nine and seventy-one hundredths acres. The complainant now brings his suit against Miss Norris and the Shrewsbury Heights Improvement Company to compel a restitution of a proportionate part of the purchase price paid by him because of the deficiency in acreage. . In addition to the representation of the acreage of the tract in the contract and in the deed, the complainant claims that there were other representations of a similar character made to him in the negotiations which led up to the contract, by Mr. Allaire, who was said to be the agent of Miss Norris. There was put in evidence a draft of an unexecuted agreement which was intended to have been signed by the complainant and the defendant as early as July 22d, 1908, in which the land is described as "containing eighty-two acres more or less." This contract appears to have been drawn by the complainant's broker from information derived from Mr. Allaire. The same acreage is mentioned in some correspondence between the parties. About a week before the contract of sale was made, Mr. Straus and his broker met Mr. Allaire, at the Polo Club, at which the price was finally fixed at $37,500, and there is evidence showing that on several occasions the complainant stated in the presence of Mr. Allaire that at that rate he was paying about $450 an acre for the land, and that this was about the same price per acre as he would have to pay for land in Westchester county, New York, where he had been to make inquiries about land and its value.

*Mr. John M. Enright* and *Mr. Frank P. McDermott,* for the complainant.

*Mr. Edmund Wilson,* attorney-general, for the defendants.

HOWELL, V. C.

The first question to be disposed of is the agency of Mr. Allaire He is a real estate broker having an office at Red Bank, near the property in question. Somehow he had the Patterson farm "on his books," as property that was for sale, but in the beginning of his negotiations with Mr. Straus and his broker he had no special or definite authority from Miss Norris to represent her in the transaction in question. The evidence shows that when he received an offer from the complainant he submitted it to Miss Norris, and I gather from the circumstances that she, either expressly or tacitly at that time, authorized Mr. Allaire to represent her in the sale to the complainant. At any rate, if she did not expressly so authorize him, she took the benefit of his labor and effort, and to the extent to which she subsequently signed documents must be held to have ratified his authority.

There is no doubt but that Mr. Allaire represented that the farm contained eighty-two acres, or that the complainant went upon the land before the deed was delivered and was there shown the boundaries and extent of it. It is quite plain that everybody understood that he was purchasing eighty-two acres of land at a price of about $450 per acre. The facts resemble those in *Paine* v. *Upton, 87 N. Y. 327*, concerning which Chief-Justice Andrews says: "The facts affirmatively show a mutual mistake of the parties, in respect to the quantity of land, which commenced with the commencement of the negotiation for the sale of the farm, and pervaded the whole dealing from that time until the transaction was consummated, by the giving of the deed and the execution of the mortgage. This mistake, moreover, was as to an essential and material element of the contract. In the absence of any finding of special facts and circumstances, the natural presumption is, that in a sale of agricultural land, the element of quantity enters into the transaction and affects the consideration agreed to be paid. But in this case it is plain that the representation of quantity was deemed material by the parties. The sale was, perhaps, not technically a sale by the acre. But the starting point of the negotiation was an inquiry by the purchaser as to the quantity of land in the farm, and the gross sum originally asked was fixed by the sellers by reckoning

the land at $150 an acre. The price finally agreed upon was also fixed upon the supposition that the farm contained at least two hundred and twenty acres." This is a fair epitome of the facts in the case at bar. In *Couse* v. *Boyles, 4 N. J. Eq. (3 Gr. Ch.) 212*, the chancellor says that there is a presumption that in fixing the price of land regard is had to the quantity.

I find, however, that the representations were not fraudulent, but were the result of an innocent mistake on the part of Miss Norris, which she was probably led into by a sort of general understanding in the neighborhood of the acreage of the tract, and particularly by a copy of a map of the Patterson farm, which came into her possession and which she showed to the complainant during the negotiations and produced at the hearing, on which the tract in question is marked "82 acres." It must be kept in mind that this suit is not a suit for the rescission or cancellation of the contract on the ground of misrepresentation, but is brought to recover back a portion of the purchase-money paid by the vendee upon the ground that he overpaid the vendor by reason of her misrepresentation of a then present fact. There appears to be no express authority in this state for such a proceeding. There are, however, many cases in which this court and the court of errors and appeals, in foreclosure suits, have ordered an abatement to be made in the amount secured by purchase-money mortgages which were the result of conveyances of land as to which the mortgagee misrepresented the number of acres in the tract conveyed and covered by the mortgage. These cases, to a large number of which reference will be made, are analogous in principle to the case at bar. The earliest one is *Couse* v. *Boyles, 4 N. J. Eq. (3 Gr. Ch.) 212*, in which there was a large deficiency of acreage, one surveyor making it twenty-two acres and another thirty-four acres out of a total of one hundred and twelve acres as represented. Chancellor Pennington says in that case: "The plain and sensible rule, as it appears to me, is this: When land is sold as containing so many acres 'more or less,' if the quantity on an actual survey and estimation either overrunning or falling short of the contents named be small, no compensation should be recovered by either party. The words 'more or less' must be intended to meet such a result, but if the variance

be considerable, the party sustaining the loss should be allowed for it, and this rule should prevail where it arises from *mistake only, without fraud or deception.* * * * The rule is stated to apply generally, although the land is not bought or sold professedly by the acre, the presumption being that in fixing the price regard was had to the quantity. If the purchaser knows the true quantity at the time of his purchase, or there are words used clearly indicating the intention of both parties not to be governed in the sale by the amount of land the purchaser will not be entitled to any relief." The ground of this decision is mistake. There was no fraud. The mistake was that of the grantor. The mistaken idea was conveyed to the grantee in the form of a misrepresentation of a fact. He relied on that misrepresentation, paid his money in consequence thereof, and then urged that the amount overpaid by him should be deducted from the amount claimed on the purchase-money mortgage. A decree was made in his favor; the deduction was allowed. The case stands approved by all the judges who have had to deal with the question.

In *Weart* v. *Rose (1863), 16 N. J. Eq. (1 C. E. Gr.) 290,* the mortgagee, who was the vendee, brought suit to redeem the mortgage after deducting therefrom the price of the deficiency ascertained to exist in the quantity of acres as described in the deed. The relief was sought—*first,* on the ground of fraud; *second,* on the ground of mutual mistake. The court held that the charge of fraud was not sustained by the testimony, and that the deficiency in acreage was too small to warrant the interference of the court on the ground of gross mistake. It followed the doctrine of *Couse* v. *Boyles,* but refused relief because of the insignificance of the cause of complaint. In *White* v. *Stretch (1871), 22 N. J. Eq. (7 C. E. Gr.) 76,* this court, upon the same principle and upon the authority of *Couse* v. *Boyles,* deducted from the purchase-money mortgage the amount of assessments on the mortgaged premises which the mortgagor had paid. In *Melick* v. *Dayton (1881), 34 N. J. Eq. (7 Stew.) 245,* the court of errors and appeals, in a foreclosure suit, declared that the mortgagor might have relief if the mortgagee had *fraudulently represented* the number of acres to be greater than the actual number conveyed, and that abatement would also be made where there is a

*gross mistake;* gross mistake was said to occur where the difference between the actual and the estimated quantity of land represented is so great as to clearly warrant the conclusion that the parties would not have contracted had they known the truth. In *Frenche* v. *The Chancellor* (*1893*), *51 N. J. Eq. (6 Dick.) 624,* the court of errors and appeals reaffirmed the doctrine of *Melick* v. *Dayton,* saying: "The words 'more or less' must be intended to meet such a result, but if the variance be considerable the party sustaining the loss should be allowed for it, and this rule should prevail when it arises from mistake only, without fraud or deception." See, also, *Kuhnen* v. *Parker* (*1897*), *56 N. J. Eq. (11 Dick.) 286; McMichael* v. *Webster* (*1898*), *57 N. J. Eq. (12 Dick.) 296; Van Blarcom* v. *Hopkins* (*1902*), *63 N. J. Eq. (18 Dick.) 466.* In *Capstick* v. *Crane* (*1903*), *66 N. J. Eq. (21 Dick.) 341,* the rule in the cases of *Couse* v. *Boyles, Dayton* v. *Melick* and *Van Blarcom* v. *Hopkins* was again announced and affirmed by the court of errors and appeals. I take it that while some of the judges have stated that relief would be granted in case of mistake, and others have stated that it would be granted in case of gross mistake, there is substantially no difference between the two expressions. The mistake must be sufficient to induce the court to believe if the truth had been known at the time, the parties would not have contracted; in view of this idea, mistake and gross mistake are interchangeable.

It will be observed that this suit was not brought until after the transaction had been consummated by the delivery of the deed and the payment of the purchase-money. It is undoubtedly the rule in England, and the defendants in this case rely upon it, that after the contract has been performed by the delivery of the deed and the satisfaction of the purchase-money, no action or suit will lie either at law or in equity to recover compensation or obtain the return of a proportionate amount of the purchase-money unless there is some covenant or agreement on which the suit or action can be based; that the vendee having chosen to accept his deed without making a survey of the property, and without having insisted upon protective covenants, he is entirely without remedy and must suffer the consequences of his folly, and that the remedy by way of compensation is not an independent remedy

but is merely ancillary to that of specific performance. *Jolliffe* v. *Baker, 11 Q. B. D. 255; 52 L. J. Q. B. 609; Palmer* v. *Johnson (C. A.), 13 Q. B. D. 351; 53 L. J. Q. B. 348.* The point has been much mooted in the English courts, but has not yet been discussed or decided by the house of lords. The question was evidently started in *Couse* v. *Boyles.* Chancellor Pennington says: "Whether a court of equity will entertain jurisdiction for the sole purpose of giving compensation or damages to a complainant for any deficiency in the quantity of land conveyed after a conveyance actually made, is a very different question from making such an allowance to a party who comes into court and asks a specific performance of an unexecuted agreement," although he had just written that he did not think it was a sufficient objection to allowing an abatement of the price that the contract had been consummated. He said it was true that the cases cited referred to contracts remaining *in fieri,* but that the principle was the same whether the contract only be executed or has been consummated by giving the deed. The point seems to have been argued in *Clark* v. *Carpenter, 19 N. J. Eq. (4 C. E. Gr.) 328.* The reason alleged on the part of the defendants in support of the English rule is stated by Mr. Williams as follows:

"The purchaser should also carefully inspect the whole of the property sold and have it surveyed prior to completion and should make inquiry of the tenants or occupiers with respect to the boundaries or other matters regarding the physical condition of the property, for if by reason of any material defect of the quantity or otherwise the property sold do not correspond with the description of it given in the contract, or in any representation which induced the purchaser to make the contract, and the error be caused by the innocent misrepresentation of the vendor, and not by fraud, the purchaser will be entitled to resist the specific performance of or to rescind the contract while it remains uncompleted; but when the contract has been fully performed the purchaser will not be entitled to any relief in respect thereof except—*first,* by virtue of an express agreement contained in the contract to make compensation for such errors, or *second,* if the defect be really a defect of title and compensation be recoverable under the covenants of title contained in the conveyance, or *third,* if the representation amounted to a warranty collateral to the contract for sale of the truth of the fact stated. Here it may be mentioned that if a man buy land without inspecting it he does so at his own risk, and must accept without compensation any defects in the physical condition of the property which are patent to any one who views it, and are not inconsistent with the description contained in the contract for sale." *1 Wms. V. & P. 539.*

This doctrine would relieve the vendor from the consequences of his misrepresentation, and is quite at variance with the case of *Redgrave* v. *Hurd, 20 C. D. 1; 51 L. J. Ch. 113*, which was expressly approved by the judicial committee of the privy counsel in *Aaron's Reefs* v. *Twiss (1896), A. C. 273; 65 L. J. P. C. 54*, and sanctioned by the supreme court of this state in *Cowley* v. *Smythe, 46 N. J. Law (17 Vr.) 380*, and by this court in *Powell* v. *Cash, 54 N. J. Eq. (9 Dick.) 218; Eibel* v. *Von Fell, 55 N. J. Eq. (10 Dick.) 670*, and *Du Bois* v. *Nugent, 69 N. J. Eq. (3 Robb.) 145*. In that case a solicitor agreed to sell an interest in an established law practice, and representations were made by him as to the amount of the net income of the business, and the purchaser examined for himself the vendor's books. Reliance in support of the contract was placed upon the fact that the party attempting to evade it had made a personal examination of the books, but the court held to the doctrine that where untrue representations are made by a vendor to a vendee, the vendee has a right to rely upon them, and the fact that he has had an opportunity to examine and did examine for himself will not avail the vendor, unless it appears affirmatively that the vendee did rely upon his own examination and not upon the statement of the vendor. Master of Rolls Jessel says: "If a man is induced to enter into a contract by a false representation, it is not a sufficient answer to him to say 'if you had used due diligence you would have found out that the report was untrue; you had the means afforded you of discovering its falsity, which you did not choose to avail yourself of.' * * * It has also been held that those who accept those false statements as true are not deprived of their remedy merely because they neglected to go and look at the contracts themselves, though they were told the contracts were in writing and might be inspected if they asked to see them. Another instance with which we are familiar is a false statement as to the contents of a lease, such a case as a man saying there was no covenant or provision in the lease to prevent the carrying on in the house to be sold the trade which the purchaser was known by the vendor to be desirous of carrying on, although the lease itself might be produced at the sale or might have been opened to the inspection of the purchaser long previous to the sale, it was

held the vendor could not be allowed to say 'you were not entitled to give credit to my statement.' It is not sufficient therefore to say that a man has had the opportunity of investigating the real state of the case, but has not availed himself of that opportunity." And that appears to be the result of the cases in this court. *Eibell* v. *Von Fell,* 55 *N. J. Eq.* (*10 Dick.*) 670, and *Du Bois* v. *Nugent, 69 N. J. Eq.* (*3 Robb.*) 145.

At common law it must be conceded that after the delivery of the deed to the grantee and the payment by him of the purchase-money for the conveyance, no right of action remains except upon some covenant or agreement which still subsists as a separate and independent cause of action; and while none of the New Jersey cases above cited reaches to the question of liability after the consummation of the contract, the reasoning of Chancellor Pennington in *Couse* v. *Boyles, supra,* seems to establish the jurisdiction of equity, provided the complainant has done nothing which would interfere with his equities accruing from the transaction. Chief-Justice Beasley in *Davis* v. *Clark, 33 N. J. Eq.* (*6 Stew.*) 579, argues that the defendant's obligation is a separate and independent one from the complainant's obligation to pay the purchase-money, and that the ground of action exists wherever the vendor is liable to the vendee for damages in consequence of the failure of the land to come up to the represented acreage. He considered the claim as a set off to be allowed in equity by way of recoupment in order to avoid a multiplicity of suits and prevent undue litigation.

The decree will therefore be in favor of the complainant.

The complainant assumed the payment of a mortgage covering the lands in question and other lands. The defendant has applied for leave to amend his bill so as to offset the amount of his claim against the amount which he has assumed to pay. I will hear counsel further on this application at the time of the settlement of the decree.